UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

M.D. ALAUDDIN,

              Petitioner,

        v.

CHRISTOPHER CHESTNUT, Acting Warden of the CALIFORNIA CITY PROCESSING CENTER; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the United States Department of Homeland Security; TODD BLANCHE, Acting Attorney General of the United States, acting in their official capacities,

              Respondents.

Case No.  1:26-cv-03541  (AMO)

**ORDER GRANTING PETITION FOR HABEAS CORPUS AND MOTION FOR TEMPORARY RESTRAINING ORDER**

Re: Dkt. Nos. 1, 2

Petitioner M.D. Alauddin ("Petitioner")—a 46-year-old native of Bangladesh with no criminal history—was arrested by U.S. Immigration and Customs Enforcement ("ICE"), a division of the Department of Homeland Security ("DHS"), on November 3, 2025 during a scheduled ICE check-in. He filed this petition for a writ of habeas corpus and motion for a temporary restraining order challenging his continued detention without a hearing, arguing that it violates his due process rights under the Fifth Amendment, the Immigration and Nationality Act ("INA"), and the Fourth Amendment. *See* Dkt. No. 1 ("Pet."). The Petition is unopposed.[1]  For the reasons set forth below, the Petition is GRANTED, and the Court orders Petitioner's immediate release.

---

[1] Respondents were ordered to file a response to the Petition by May 10, 2026.  (Dkt. 4.) Respondents did not file a response nor a request for extension of time. Thus, the Court construes the failure to timely file as a non-opposition. L.R. 230(c).

## I.    BACKGROUND

Petitioner entered the United States without inspection on May 8, 2024, after which he was apprehended by U.S. Customs and Border Protection. Pet. ¶ 56. He was released by DHS on his own recognizance pursuant to 8 U.S.C § 1226. *Id*. ¶ 57. Following his release, Petitioner filed an application for asylum, was granted work authorization by USCIS, and began work. *Id*. ¶ 61. DHS also issued a Notice to Appear and initiated removal proceedings. *See* Dkt. 2, Ex. 2. Though his asylum application was denied, and he was ordered removed on March 24, 2026, Petitioner timely appealed that decision to the Board of Immigration Appeals ("BIA") on April 8, 2026. *See* Pet. ¶ 3; Dkt. 2, Ex. 2. That appeal is still pending.[2] *See* Pet ¶ 3.

Despite his prior release into the United States, on November 3, 2026, ICE re-detained Petitioner following a scheduled ICE check-in. *Id*.  ¶ 65. Petitioner contends that there were no changed circumstances justifying his arrest and his prolonged detention: he has no criminal history and has abided by all his conditions of release. *Id*. ¶¶ 71–72. In fact, Petitioner was arrested by ICE when attempting to comply with his conditions of release.

Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order challenging his continued detainment and Respondents' failure to provide him with a bond hearing. The Court issued a briefing schedule and informed the parties that it intended to rule directly on the petition. Dkt. 4.

## II.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas

---

[2] Since Petitioner has appealed his order of removal to the BIA, there is no final order of removal in place. 8 U.S.C. § 1101(a)(47)(B) (an order of deportation "shall become final upon the earlier of—(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which  the alien is permitted to seek review of such order by the Board of Immigration Appeals"); *see also* Cui v. Garland, 13 F.4th 991, 996 (9th Cir. 2021).

corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.    DISCUSSION

Petitioner asserts four claims for relief, including that his continued detention violates his substantive due process rights (count 1) and procedural due process rights (count 2) under the fifth amendment, that his warrantless arrest violated the Fourth Amendment (count 3), and that his continued detention under 8 U.S.C. § 1225 violates the Immigration and Nationality Act ("INA"). Because Petitioner's procedural due process claim (2) affords Petitioner all the relief to which he is entitled—namely, release and a pre-deprivation hearing prior to re-detention—the Court need not and does not reach Petitioner's remaining three claims.

Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

####    A.    Petitioner's Protected Liberty Interest

Petitioner contends that his release from immigration custody by the affirmative act of the Government pursuant to 8 U.S.C. § 1226 on April 11, 2023, and then the three years of freedom that followed, gave rise to a protected liberty interest. *See* Pet. ¶ 28. The Court agrees.

The regulations that authorize immigration authorities to release a noncitizen on his own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination

by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). "Thus, DHS may generally not re-arrest a previously released noncitizen absent a change in circumstances." *Singh*, 2026 WL 468159, at * 2 (internal quotation omitted).

The record before the Court indicates that immigration authorities determined that Petitioner was neither a flight risk nor dangerous when they chose to release him into the United States roughly two years ago. Petitioner maintains that he was "released on his own recognizance pursuant to INA § 236[,]" and Respondents have raised no facts to the contrary. Pet. ¶ 57. Since then, Petitioner has developed ties in the community—he obtained work authorization, timely applied for asylum, and financially supports his family. Pet. ¶¶ 61, 75, 90. Further, Petitioner maintains that he has a clean criminal record. Pet. ¶ 72. Respondents do not rebut any of these facts, and have raised no new facts indicating that there is a change in circumstances warranting re-detainment.

As such, the Government's election to "release Petitioner under § 1226(a) provided Petitioner with a liberty interest that is protected by the Due Process Clause." *Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2026 WL 1162724, at *4 (N.D. Cal. Apr. 29, 2026); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [the noncitizen] have a liberty interest in remaining out of custody on bond."); *Pinchi v. Noem*, 792 F.Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *He v. Lyons*, No. 25-cv-10639-JSC, 2026 WL 280074, at *3 (N.D. Cal. Feb. 3, 2026) ("Courts throughout the Ninth Circuit have concluded individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond."); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-

United States District Court
Eastern District of California

4

05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). Because Petitioner was released from DHS custody on his own recognizance in 2024, he maintains a protected liberty interest in remaining out of custody.

### B.      Procedural Due Process

Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for the past two years. Since then, he has obtained work authorization and financially supports his family. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla v. U.S. Immigr. & Customs Env't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Sharan S. v. Chestnut*, No. 1:25-CV-01427-KES-SKO (HC), 2025 WL 3167826 (E.D. Cal. Nov. 12, 2025) ("Under section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail

risk.'") (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The record before the Court indicates that Petitioner has no criminal history and has complied with all terms of his release. Respondents do not raise any facts to the contrary. As there have been no procedural safeguards to determine if Petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

The final *Mathews* factor also weighs in Petitioner's favor. Although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining Petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

## IV. CONCLUSION AND ORDER

Accordingly, the Petition is GRANTED. IT IS HEREBY ORDERED that:

1. Respondents immediately release Petitioner MD Alauddin (A226-029-613) from their custody.

2. Respondents shall not impose any additional restrictions on Petitioner, unless they are determined to be necessary at a future pre-deprivation and/or custody hearing.

3. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

//

//

//

//

United States District Court
Eastern District of California

6

4.       The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: May 14, 2026

ARACELI MARTÍNEZ-OLGUÍN
United States District Judge

United States District Court
Eastern District of California

7